Council, I understand, I haven't used it myself, but I understand that you can press a button on that podium which will lower it for you, if you wish. Are you comfortable with that level? Yes, Your Honor. All right, very well. You may proceed. May it please the Court, my name is Tarun Bittar, and I am attorney for Petitioner Nirmal Singh. Petitioner Nirmal Singh is a citizen of India, his religion is Sikh, and he applied for asylum with the holding of removal and conventionally is tortured in United States. Counsel, I'm worried about this date of entry. We had another case where the notice of removal said right on it, you entered on such and such a date, but in this case it didn't. It said the date and place were unknown. I gather that means he snuck in, is that right? Yes, Your Honor, he entered without inspection. Okay, so he snuck in. Yes. Now, there's a reason for that one-year rule. If you need asylum, you're supposed to come to the U.S. and promptly request it. You're not supposed to just sneak into the U.S. and hope you don't get caught, and if you get caught months or years or decades later, then say, oh, by the way, I need asylum. We have no idea when this guy snuck in, and if we don't stick with the BIA's view that he really has to prove when he came in, then we give a huge advantage to people that sneak in instead of presenting themselves properly. They can just lie about when they snuck in and seek asylum decades after they snuck in. How do you get around that problem? Your Honor, in this particular case, there is evidence in the record which he was in U.P. for one month, in the month of August 2004. What is the evidence, and where is it? This is a letter from a gurudwara in Nainital in U.P. in the certified record. In our pre-hearing statement. What page? Where? Your Honor, I do not have the page number on this, but this is a letter by the gurudwara in Nainital in U.P. where he stayed in August 2004 for one month. Then he entered with a passport by an agent in Canada, and the agent took the passport with him. He does not have any proof. This is all talk. It's not evidence. Yes. Let me tell you what I was thinking so that you can show me why it's not practical in a case like this. I was thinking if you were fleeing oppression and you got to the U.S., you'd probably save some kind of souvenir. Maybe your first McDonald's receipt. Maybe your first bus ticket. Your first movie ticket. Some kind of souvenir. Just the way people do when they are tourists and they often save little souvenirs of the country they went to or the location within the country they went to. You'd especially want a souvenir for something really important to your life, like when you're a refugee and you get to a safe haven. It doesn't seem unreasonable to require that. Why didn't he have something like that? Your Honor, the petitioner in this case is a totally illiterate person. He has fourth grade education. He has education ñ I mean, language is a big barrier. He could not speak English. I like McDonald's. I eat there a lot. And I see plenty of people there. My guess is they have very poor education. Yes, Your Honor. I understand. But his testimony regarding his claim was found to be credible by the court and also by the BIA. So I believe his testimony regarding his date of entry should also be considered credible. But in terms of the kinds of questions I was asking before about the corroboration issue, in general, with regard to everything else he said, this man was considered credible, right? Yes. I don't know if there was a particular credibility determination with regard to what he said about his entry. Was there or was that part of the larger credibility determination? Yes, Your Honor. Which? Your Honor, the judge found him credible, and he found him that he established past persecution on the basis of protected grounds. But did he find him credible with regard to his testimony as to when he came in? Regarding claim, yes, Your Honor, but not regarding date of entry. As to that, as I understand it, his testimony was that he entered on October 20th, 2004. Is that correct? That's correct, Your Honor. But he didn't file his application until November 14th, 2005, which means that he failed to meet the one-year time period. Your Honor, what happened in this case, he entered United States on October 20th, 2004. Then he filed application for asylum on October 13th, 2005. And application was incomplete and came back to him. There is two steps on the application. The first step shows that he did good faith efforts to file within one year, which is 13th of October, 2005. And then he refiled within reasonable time, within a month, which was on 14th of November, 2005. How does this uneducated fellow with no souvenirs happen? I don't suppose he maintains a daily calendar that he keeps in his pocket or on a PDA the way a lawyer might. How does he know that he entered October 20th, 2004? Your Honor, even in his transcript, if you read it, it says that month, 10th, day, this. He's testifying very differently. So he said he stayed in Canada for 10 days and he entered Canada on 10th of October, 2004. How would he know if he's such an uneducated fellow and he maintains no souvenirs or records? Your Honor, the way he testified in the court looked like he's counting, like 10 days, month, 10th, day, this. The way he testified in the court was really different. With regard to the corroboration question, is the total of the dialogue about corroboration in the record what appears in 1-9 and 1-10 where the judge says – I think it's the judge or someone says, Jim, the asylum office refers your case on the basis that you could not prove that you applied for asylum within one year. Do you have any proof which shows you applied for asylum within one year? He says, yes. What proof do you have? Nantil. What does that say? I live for one month in Nantil. And when did you live in Nantil? In 2004. And then he shows the letter and then he says, thank you. That's it. The judge doesn't say, I want more. And the judge doesn't say, why don't you have more? And that's all he says. Is that right? Yes, Your Honor. Does that satisfy the statute in your report? If he's otherwise credible? Was he given an opportunity to provide anything else? He says – he gives him something. He says, thank you. Does he say, that's not good enough, I want something else? I don't think it was said in the court, Your Honor. Does he say, why don't you have something else? No, Your Honor. That question was not asked. So I ask the question if you have any proof to show the proof of Nantil. Your question, I see. Was he cross-examined on that? Did the judge ever say, I want something else? No, Your Honor. Even I think in the cross-examination, that question was not asked from him. All right. Well, I'll ask your opposition. Yes. What do we have again in the record that shows he filed it? He tried to file timely and it got rejected and then he filed again? Your Honor, only thing is the credible testimony that he entered on 20th of October, 2004. And stamp on the application for asylum, there are two stamps. The first stamp shows that he tried to file on 13th of October, 2005, which is within one year of entry. And the second stamp is 14th of November, 2005. But the BIA credited the second stamp. That's correct, Your Honor. Because under exceptional circumstances, it should be considered on time because he did good faith efforts to file within one year, which was 14th of October, 2000. And was that issue ever addressed by the BIA? Was that the issue of the exception ever addressed by the IJ or the BIA? In other words, is it because they've – I understand your argument that even though they didn't – they regarded it as being filed late, that you think there's an applicable exception. Was your argument that there's an applicable exception ever addressed? I don't think so, Your Honor. But you don't know. In the – in our brief, we addressed that under exceptional circumstances, his application should be on time. Agency ever addressed? I don't think so, Your Honor. You raised it before the BIA? Yes, Your Honor. In our brief, we did that. Yeah. And, Your Honor – Was there testimony about these rubber stamps, the first – the October 13 one, who lined it out and why and how the stamp got on there in the first place and the November 14 stamp? Was there testimony about that? It was not in the court, Your Honor. It was in our BIA and Ninth Circuit brief. We talk about it. But there was no testimony? No, Your Honor. Like a BIA person testifying? No. There was no testimony in the court regarding the stamp. Was there testimony from the petitioner about how those two rubber stamps got on there and how the first one got struck out, if it is first? Because, Your Honor, I never represented the client in the beginning. When the application for asylum was filed, we saw in that certified record that there was a date that he tried to file on 13th of October. If that's what that means. Yes. Which we don't know if there's no testimony. He never gave testimony on that in the court. And, Your Honor, even if he's time barred, but I think BIA erred in denying his withholding of removal and cat relief. Because the judge found that he was persecuted in his country on the basis of political opinion and he established past persecution and there is presumption of future persecution unless it is rebutted by the government. And in this case, the government had rebutted that presumption by filing the background material on relocation. That he can relocate in India. But I believe that the material regarding relocation is not enough because under the Ninth Circuit law, they should have filed the material which is sufficient on the changed country condition. Which they failed to provide that. So, BIA failed to consider the issue of reasonableness of relocation. And also, petitioner is not required to establish that persecution is countrywide. That his threat is countrywide. And under these circumstances, I think. Does he have a Sikh Prime Minister? Yes, the Prime Minister of the country is Sikh now. But Your Honor, this particular client, he is a member of Akali Dalman. And Prime Minister... Akali Dalman wants to callous stand and they are separatists. Yes. And the Prime Minister, I would imagine, wants to... The Prime Minister of India belongs to Congress Party which is like totally opposition. Thank you, Counsel. Your time has expired. Thank you. We will hear from the government. Thank you. May it please the Court, Rebecca Hoffberg on behalf of the Respondent, the United States Attorney General. Mr. Nirmal Singh sought asylum withholding of removal and cap protection. In this case, the agency denied his asylum application for lack of timeliness. On that timeliness point, Counsel, what's the government's position that the application was not filed until November 14th or that the October 20th arrival date was never corroborated? What are you relying on for the failure to file within one year? Well, the petitioner had the burden to prove. And this is the important part about this case because it's different than your general burden of proof when you're showing an asylum claim, as you heard in the previous case, in terms of corroborating other types of claims. The burden of proof is clear and convincing evidence for your entry date. I think that's a coherent position. If the rule was that you always have to... Therefore, you always have to have some corroboration. That would be a coherent rule. Is that the rule? Well, Your Honor, you were concerned about the notice issue. I am quite concerned about it in this case. Yes. And I think in this case you avoid your concern because at the time of his interview with the asylum officer, and this was in December 2005, I believe, the asylum officer said to him, I don't believe the manner in which you entered. He came up with a letter. Okay. Now, maybe that letter, it corroborates something. It corroborates at least that he didn't leave India until, say, September 1. So it doesn't prove that he came within a year, but it proves that he came at least close to a year. That's correct, except that opposing counsel said that he was never cross-examined about this, and what you pointed out was that there was an exchange in the beginning, and this is around pages 109 to 110, and he says, you know, what he points... First of all, it's pointed out on the record, the asylum officer referred your case to the judge on the basis that you could not prove that you applied for asylum within one year. So he came to the hearing. Yes, I have proved that. Right. Then what happened? He says that. Now, later on page 133, this is pages 133, 134, 135, this is during the cross-examination. He's asked, what do you have, again, he was asked, do you have any documents or statements that support when you entered the United States in 2004? He says yes. Well, what documents do you have to support that fact? No. You have none? He shook his head, so they asked him to clarify. What documents are those, sir? I said no. Okay? So it's addressed again on the cross-examination, and he doesn't try to assert at that point, well, make the connection, I had this document that showed me somewhere in August 2004, and therefore this somehow shows that I entered on October 20th, 2004. Did I just then say to him, well, I'm going to have to have some documents? Well, it was made clear. Or why don't you have the documents? It's a point that the immigration judge did not specifically ask him that question immediately following that, but at the end of the hearing it was made clear by the immigration judge when he again pointed out what the asylum officer had found. And the fact that the asylum officer --. It was made clear in his ruling, but he never gave him a chance to say why he didn't have anything else. Well, he did give him the chance and --. When did he give him the chance? Well, he gave him the chance when it was pointed out to him that he didn't prove his one-year issue. So the fact that he knew coming into the hearing. Wasn't that after the record was closed? No. I mean, during the hearing it was made clear to him that he needed to show proof of when he entered and --. Not by whom? Did the immigrant? I mean, it's a strangely worded statute. It doesn't say you need to do this. It says the IJ can require you to do this. That's correct. Did the IJ ever require him to do that? Did the IJ ever say to him, I want some other corroboration other than what you've given me? When I said, well, why don't you have it? Did he ever do that? It's true that the IJ did not say that at the hearing. The asylum officer said that before the hearing, giving him the opportunity. That might be an explanation, but he did bring something at that point. But what he brought was very tangential. The IJ, the trier of fact, did not say to him, I believe you to be otherwise credible, because that is what he found. But I still want something else than what you brought in. Either I'll give you a continuance to have it or why don't you have it. Did he ever say that? Well, he never asked for a continuance. Because he was never told that he needed to have other corroboration than what he had. He was hinted at it by the asylum officer during the interview. I know, but the trier of fact, the IJ, never said to him, I want something else. He knows that his burden of proof on entry is clear and convincing evidence. As I said, if the BIA were to rule that to meet that clear and convincing evidence, you always need to have some kind of corroboration, that would be a coherent rule that I would think was a good rule. But that's not the rule. That's not what they said here, right? Well, they're still trying to make it so that if it's available, you have to show that it wasn't reasonably, you can't reasonably corroborate. In this case, he had family. But he wasn't asked that. Was he asked that? Well, he was asked about the location of his family. Is this why he didn't have something else? He wasn't specifically asked that question. He was not specifically asked about what, you know, why don't you have this particular thing. He was asked several times, do you have anything to corroborate? And when he said no, I can't show anything about my entry date, specifically said no documents, knowing coming into the hearing about his burden, he was on notice in this case. Counsel, let's go back to the question I asked you at the very beginning. I'm not sure I ever got an answer, and that is, are you relying on the failure to corroborate, or are you relying on the November 14th date? Because we have this issue about the crossing out of October 13th. Now, what does the record tell us about that? That's correct. If you look, this is on page 507 of the record, and you'll see that going along the right side of the page, October 13th, 2005 is crossed out, and instead November 14th, 2005. The way I look at this asylum application, I'm looking at the handwritten things, which I'm guessing may have been written in once it was sent back to him. For example, it's missing his alien registration number. It's not clear from the record why it was sent back, but sometimes this happens, there are defects. The agency never decided whether there was an extraordinary circumstance in this case. So if it was filed on October 13th, and that would have been a year, they never got to that point to say, well, was it reasonable that it took him until November 14th to then resubmit it? And that's critical in this case, because they never established, they found that he never established his entry date, and so they didn't know the measure of which to measure the reasonableness of the lateness. So we're not relying on whether that was a reasonable amount of time. The agency never made that decision, and so this court. Well, you would prevail if we were required to accept the November 15th date, November 14th date. Isn't that right? That is correct. There's no other indication in the record other than October 20th for arrival. That is correct. There is something under the extraordinary circumstance exception that should this court have found it. The problem is that you first need to say, well, if you believe that he arrived on that date, and then you find that he did submit his application the first time around on October 13th, that would technically be within one year. And then you would say, well, did he then resubmit it within a reasonable amount of time? Why wasn't that done? I'm sorry. Why wasn't the extraordinary circumstance done? Because the agency didn't have to make that decision. They had no way of knowing whether it was reasonable because they didn't believe that it was first filed within one year in the first place, initially first filed on October 13th. Because they didn't believe the October 20th arrival. Because they didn't believe the October 20th, 2004 date. Exactly. What was there in the record which would cast doubt on the October 20th arrival date? During his interview with the asylum officer, and this is what I think is so critical in this case because it addresses the notice issue and it addresses why he was questioned about this particular fact versus other facts. He was asked about his entry going from Canada into the United States. He entered the United States, according to him, in Blaine, Washington, on October 20th, 2004, after having been in Vancouver for ten days. So he went from India to Vancouver to the U.S. The asylum officer asked him, and this is on pages 275 and 276. His interview with the asylum officer is recorded in the assessment to refer. And the asylum officer specifically informed the petitioner that he did not corroborate his entrance, and the reason why he was questioning it is because he asked him about his route from Canada into the U.S. Did you go through tunnels? Did you go over bridges? Because there are a fair amount of them in that region. And the petitioner didn't say, no, I didn't go through any of those. He drove, he went from one place to another over the span of over an hour and never went through a single tunnel or bridge. And the asylum officer thought that was peculiar in that region according to what he was telling him. But generally, my understanding is that the hearing before the IJ is a de novo hearing and except maybe for a notice issue, but not because the IJ, whatever the asylum officer asked him or didn't ask him or whatever he said or didn't say before the asylum officer is not evidence for our purposes. It's not the evidence, but it's addressing this issue of how do you know when you need to corroborate. Let me make sure I understand this. As a practical matter to get in, the asylum officer figures if he was on a road, he'd have to go over a tunnel or bridge. He was questioning him about the route and he seemed unsure. Did he go through any tunnels or bridges? He said something to that effect. And the petitioner gave him an answer that made it seem like it wasn't the route that he could have said. I don't think you were listening to my question because you were answering while I was giving it. I'm sorry. It's the idea that the asylum officer knew there were tunnels and bridges on the roads coming in in the area around Blaine. So he asked him if he used a tunnel or bridge, and this fellow said, no tunnels, no bridges. That's what the assessment to refer says. Help me on something else. I never quite understood these rubber stamps. Have I got it right that the crossed-out rubber stamp says that he filed his application for asylum a week before he says he got to the U.S.?  Or a week before a year later than that. A week before a year. It's October 13, 2005. Was there any evidence about how you get that rubber stamp on there? It looks like it would be some officer's somewhat worn rubber stamp. How would it get on there at all? I think when the application is technically submitted to the agency, that's how they make sure of the exact date that it was. So clearly when it was resubmitted again, I have to admit that I don't know exactly the process used in the rubber stamping, but it is the official bar of how you know that something was actually filed. What was the date that the IJ and the BIA relied upon for the official application? Well, they said that it was officially filed November 14, 2005. And so even by his own testimony then, it would have been more than a year, which is going back to your point. But they never made that extraordinary circumstance finding. So that's the problem. One last thing, Your Honors. I see that my time is up. I just wanted to point out that if you believe the argument's position that relocation is possible and that the government met its burden with respect to the withholding claim, this issue becomes a little bit moot if you were to remand it on the asylum. I just wanted to point that out. If you find that relocation is reasonable, it would rebut an asylum claim as well in this case. Thank you, Counsel. The case just argued will be submitted for decision, and we will hear argument next.
judges: O'scannlain, Kleinfeld, Berzon